UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

A.W., by his father and legal guardian, E.W.,

Plaintiff,

v.                                                              No. 19-CV-7011 (MKB)(MMH)

NEW YORK CITY DEPARTMENT OF
EDUCATION and ARIES BALUYOT, in
his individual and official capacity,

Defendants.

Plaintiff's Memorandum in Opposition to Defendant New York City Department of
Education's Motion for Summary Judgment

Respectfully Submitted,

**Attorneys for Plaintiff**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
Tel: (212) 248-7906

Evan Brustein
Brustein Law PLLC
299 Broadway, 17th Floor
New York, NY, 10007
Tel: (212) 233-3900

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    Legal Standards .................................................................................................................. 2

    II.    Plaintiff has raised a triable issue of fact as to whether Baluyot was acting in the scope of his employment when he hit Plaintiff and is therefore responsible under *respondeat superior* 3

        A.    The connection between the time, place and occasion for the act ................................... 4

        B.    The history of the relationship between employer and employee ................................... 8

        C.    Whether the act is one commonly done by such an employee ...................................... 11

        D.    The extent of departure from normal methods of performance ..................................... 13

        E.    Whether the specific act was one that the employer could reasonably have anticipated 14

CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.W. by E.W. v. N.Y. Dep't of Educ.*,
   519 F.Supp.3d 128 (E.D.N.Y. 2021) ............................................................................4, 12, 14

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir.2004) .............................................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................................................3

*Capak v. Epps*,
   No. 18-CV-4325, 2020 WL 3073210 (S.D.N.Y. June 10, 2020) ..............................................9

*Cromer v. City Sch. Dist. Of Albany Bd. of Educ.*,
   No. 01-02068683, 2002 WL 1174683 (N.Y. Sup. Ct. Apr. 5, 2002) ...............................13, 14

*Delee v. Hannigan*,
   No. 09-CV-838-FPG, 2016 WL 5529382 (W.D.N.Y. Sept. 30, 2016), *aff'd*,
   729 F. App'x 25 (2d Cir. 2018) ......................................................................................................4

*Dykes v. McRoberts Protective Agency, Inc.*,
   256 A.D.2d 2 (1st Dept. 1998) .......................................................................................... *passim*

*Gonzalez v. City of Schenectady*,
   728 F.3d 149 (2d Cir. 2013) ...........................................................................................................2

*Huminski v. Corsones*,
   396 F.3d 53 (2d Cir.2005) ..............................................................................................................2

*Inglis v. Dundee Central School District Board of Education*,
   180 Misc.2d 156 (Sup. Ct. 1999) ..........................................................................................13, 14

*JG & PG ex rel. JGIII v. Card*,
   No. 08 CIV. 5668 (KMW), 2009 WL 2986640 (S.D.N.Y. Sept. 17, 2009) ............................15

*Lowy v. Travelers Prop. & Cas. Co.*,
   No. 99 CIV. 2727 (MBM), 2000 WL 526702 (S.D.N.Y. May 2, 2000) ...............................4, 5

*Rivera v. State*,
   34 N.Y.3d 383, 142 N.E.3d 641 (2019) .......................................................................................11

*Sandoval v. Leake & Wass Servs., Inc.*,
   192 A.D.2d 91 (1st Dept. 2020) ...................................................................................................12

*Scott v. Lopez*,
   136 A.D.3d 885, 25 N.Y.S.3d 298 (2d Dep't 2016) .................................................................3

*Stewartson v. Gristede's Supermarket, Inc.*,
   271 A.D.2d 324 (1st Dept. 2000) ..........................................................................................7, 8

*Tomscha v. Poole*,
   No. 16 CIV. 1263 (KPF), 2016 WL 7378974 (S.D.N.Y. Dec. 20, 2016) .................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................3

Fed. R. Civ. P. 56(a) ........................................................................................................................2

Fed.R.Civ.P. 56(c)(1) ......................................................................................................................3

Local Civil Rule 56.1 .......................................................................................................................1

"Board of Regents Prohibits Corporal Punishment in Public Schools". *The New York Times* ..............................................................................................................................10

Gershoff, Elizabeth T.; Font, Sarah A. (2016). *"Corporal Punishment in U.S. Public Schools: Prevalence, Disparities in Use, and Status in State and Federal Policy"*. ................................................................................................................10

Munson, Emilie, Solomon, Joshua, Rocheleau, Matt (September 26, 2022). "More than 1,600 corporal punishment cases substantiated in New York public schools in recent years". *The Times Union.* ..................................................................10

Strauss, Valerie (September 18, 2014). "19 states still allow corporal punishment in school". *The Washington Post.* ...........................................................................10

## PRELIMINARY STATEMENT

Defendant New York City Department of Education ("DOE")'s Motion for Summary Judgment should be denied because the undisputed material facts do not support its case.[1] Plaintiff A.W., an autistic student at P.S. 721K, was punished for his misbehavior by not being allowed to attend his externship at the Gap on December 17 and 18, 2018.[2] Instead of working at the Gap, A.W. was left in the care of Baluyot, a paraprofessional at P.S. 721K for a different externship, collecting garbage in the school.[3] While in Baluyot's care, on both days, Baluyot struck A.W. with a stick or ruler multiple times, causing significant bruising on his leg and buttock.[4] Baluyot had no personal animus against A.W.[5] and the only possible explanation for the use of force was to discipline A,W. for his behavior, which lead to his being placed in Baluyot's externship.

While Defendant DOE makes arguments about the attack occurring in the basement and it therefore being outside the scope of Baluyot's employment since students are not allowed in the basement, this argument is a red herring. It is undisputed that the attack occurred inside of A.W.'s school,[6] during school hours,[7] while A.W. was assigned to the care and supervision of Baluyot.[8] It is undisputed that Baluyot was allowed to take students, including A.W. on the

---

[1] Plaintiff respectfully refers the Court to Plaintiff's A.W.'s Response to Defendant New York City's Local Civil Rule 56.1 Statement and Plaintiff's Counter 56.1 Statement and Plaintiff A.W.'s Counter-Statement of Undisputed Facts under Local Civil Rule 56.1 ("Ptf 56.1") for a full recitation of the undisputed material facts.
[2] Ptf 56.1 at 79-80.
[3] *Id*. at 81-99.
[4] *Id*. at 97-104.
[5] *Id*. at 77-78.
[6] *Id*. at 97-104.
[7] *Id*. at 97-104.
[8] *Id*. at 81-99.

1

elevator,[9] and that Baluyot went to the basement during his externship for cleaning supplies.[10] It is also undisputed that Baluyot could not leave A.W. unsupervised,[11] so the logical conclusion is that when Baluyot went to the basement for supplies, he took A.W. with him. Therefore, the only actual question raised by Defendant DOE is whether Baluyot's use of force was so unexpected that it was outside the scope of his employment for purposes of *respondeat superior*. As explained below, Defendant DOE not only had prior notice of Baluyot's history of using force on students and had failed to train or discipline him, but the use of a ruler or stick as a form of disciplining a student is one of the oldest pedagogical tools. As such, Baluyot's disciplining A.W., who was under his supervision, during school hours, in the school building was clearly not beyond the scope of his employment and the motion should be denied.

## ARGUMENT

### I.  Legal Standards

Under Fed. R. Civ. P. 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The moving party bears the burden of showing that he or she is entitled to summary judgment.[13] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence

---

[9] *Id*. at 87.
[10] *Id*. at 95.
[11] *Id*. at 88 & 96.
[12] Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).
[13] *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005).

2

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[14] The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."[15]

## II. Plaintiff has raised a triable issue of fact as to whether Baluyot was acting in the scope of his employment when he hit Plaintiff and is therefore responsible under *respondeat superior*

In New York, an employer is liable for the torts of its employees, including intentional torts, where those employees act within the scope of their employment.[16] Under this standard, an employer is accountable for the acts of an employee "so long as the tortious conduct is generally foreseeable and a natural incident of the employment."[17] In *Riviello v. Waldron*, the New York Court of Appeals distilled this test into five factors to be weighed:

> [1] the connection between the time, place and occasion for the act;
> [2] the history of the relationship between employer and employee as spelled out in actual practice; [3] whether the act is one commonly done by such an employee; [4] the extent of departure from normal methods of performance; and [5] whether the specific act was one that the employer could reasonably have anticipated.[18]

In denying NYCDOE's motion to dismiss under Rule 12(b)(6), this Court held that three out of five of the *Riviello* factors weighed in Plaintiff's favor. After discovery, all five factors weigh in Plaintiff's favor and NYCDOE's motion for summary judgment should be denied.

---

[14] Fed.R.Civ.P. 56(c)(1).
[15] *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir.1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").
[16] *Riviello*, 47 N.Y.2d at 302-04, 391 N.E.2d at 1281-82.
[17] *Scott v. Lopez*, 136 A.D.3d 885, 886, 25 N.Y.S.3d 298, 300 (2d Dep't 2016) (internal quotation marks and citation omitted).
[18] *Riviello*, 47 N.Y.2d at 303, 391 N.E.2d at 1281 (internal citation omitted).

3

### A. The connection between the time, place and occasion for the act

To begin with, the connection between the time, place, and occasion of Baluyot's attack on A.W. strongly counsels in favor of NYCDOE's liability. As this Court observed in its earlier opinion, "Plaintiff alleged that Baluyot was on duty as a paraprofessional and the alleged assault and battery occurred at P.S. 721K—in satisfaction of the first factor as to time, place, and occasion."[19] As the New York Court of Appeals has observed, an analysis of this first factor "need not detain" Courts where the events took place at work during work hours even if the employee was not actively engaged in his or her work duties at the time.[20]

Discovery has shown that Plaintiff had been misbehaving and was therefore not sent to the Gap to work on December 17 and 18, 2023.[21] Instead, Plaintiff was being punished by being assigned to assist Baluyot in collecting garbage and delivering school supplies to staff between 10:00 a.m. and 11:00 a.m. on those two days.[22] Contrary to NYCDOE's claims, Baluyot admitted that he worked as a cleaner during school hours when students were at "externships" at places like the Gap and that students, including Plaintiff, were assigned to assist him on his cleaning duties as punishment for alleged misbehavior.[23]

---

[19] *A.W. by E.W. v. N.Y. Dep't of Educ.*, 519 F.Supp.3d 128, 140 (E.D.N.Y. 2021).
[20] *Riviello*, 47 N.Y.2d at 303, 391 N.E.2d at 1281; *see also Delee v. Hannigan*, No. 09-CV-838-FPG, 2016 WL 5529382, at *5 (W.D.N.Y. Sept. 30, 2016) (finding corrections officer acted within scope of employment when allegedly involved in assault of inmate that occurred "at work, during [the officer's] scheduled work hours"), *aff'd*, 729 F. App'x 25 (2d Cir. 2018) (summary order); *Tomscha v. Poole*, No. 16 CIV. 1263 (KPF), 2016 WL 7378974, at *8 (S.D.N.Y. Dec. 20, 2016) (finding that employee's allegedly tortious actions occurring "during work hours" at the workplace "weigh[ed] strongly" in favor of first factor being satisfied); *Lowy v. Travelers Prop. & Cas. Co.*, No. 99 CIV. 2727 (MBM), 2000 WL 526702, at *3 (S.D.N.Y. May 2, 2000) (first factor weighed in favor of employee acting within scope of employment where employee "allegedly acted at his workplace during work hours").
[21] Ptf 56.1 at 79-80.
[22] *Id*. at 81-99.
[23] *Id*. at 89-93.

Despite NYCDOE's claim that the basement was off-limits to Plaintiff and the other students, it is undisputed that Plaintiff could not be left alone.[24] It is also undisputed that Baluyot sometimes got cleaning supplies during the school day from the basement.[25] A reasonable inference is that when Baluyot needed cleaning supplies and A.W. was assigned to Baluyot's "externship," A.W. would have to accompany him to the basement. In other words, taking Plaintiff to the basement could not have been outside of Baluyot's duties when he was assigned to supervise Plaintiff. At the very least, this raises a triable issue of fact.

Even more importantly, Baluyot was assigned to supervise A.W. on December 17 and 18, 2018.[26] On days Plaintiff was not at the Gap, Baluyot supervised him from the hours 10:00 a.m. to 11:00 a.m.[27] On December 17, 2018, Plaintiff was written up by a teacher at 12:30 p.m., which means that Plaintiff could not have been at the Gap on December 17, 2018.[28] Additionally, Plaintiff was kept back from the Gap for incidents much like the one he was written up for on December 17, 2018,[29] which likely explains why he was also with Baluyot on December 18, 2018. At the very least, this raises a triable issue of fact.

With this background in mind, NYCDOE's reliance on the 1998 Appellate Division, First Department case of *Dykes v. McRoberts Protective Agency, Inc.*[30] falls apart. In *Dykes,* a security guard acting on a long-standing personal grudge and against specific orders to remain at his post in a bank lobby, deliberately attacked his security supervisor at her work station in the basement

---

[24] *Id*. at 88 & 96.
[25] *Id*. at 95.
[26] *Id*. at 79-99.
[27] *Id*. at 91.
[28] *Id*. at 98.
[29] *Id*. at 99.
[30] *Dykes v. McRoberts Protective Agency, Inc.*, 256 A.D.2d 2 (1st Dept. 1998).

and then, following her, attacked her again in the lobby, to which she had fled.[31] The Second Department focused on the lack of foreseeability of the attack and the fact that it appeared to have grown out of a personal grudge.[32] Here, in contrast, Baluyot was supervising A.W. and had the obligation to bring him with him wherever he went, regardless of whether that was to the hallway or to the supply rooms in the basement.[33]

More importantly, however, Baluyot's actions were foreseeable. That is, he had a history of using force on students for which he was neither disciplined nor given additional training.[34] As the previous force was condoned by NYCDOE, it is reasonable to conclude that Baluyot's use of force was furthering a NYCDOE objective.

Moreover, merely because Baluyot struck A.W. with a stick or a ruler does not mean he did not have a pedagogical purpose. Baluyot testified that he had a good relationship with A.W. before this incident.[35] He need not have been acting on a personal grudge to have sought to discourage A.W. from misbehaving. Use of a ruler or stick as a form of negative reinforcement is so old that it was not prohibited in New York public schools until 1985, when corporal punishment was banned, and remains legal in New York private schools to this day. Regardless of Baluyot's motives, NYCDOE chose to punish A.W. by making him stay behind and work under Baluyot's supervision and whether Baluyot's use of force was foreseeable raises a triable issue of fact.

---

[31] *Id*. at 3.
[32] *Id*.
[33] Ptf 56.1 at 88.
[34] *Id*. at 57-76.
[35] *Id*. at 77-78.

Equally important, two years later the First Department distinguished the *Dykes* case in *Stewartson v. Gristede's Supermarket, Inc.*[36] In *Stewartson*, a store manager had gotten into an argument with a customer ahead of the plaintiff on a checkout line. The customer ahead of the plaintiff was unhappy at having to wait for the manager to fill a phone order while she waited on line. She stormed out of the store in a rage. The plaintiff waited until the phone order had been fulfilled and then began putting his items on the conveyor belt. The manager and the plaintiff accidentally brushed against each other and the manager became irate. The manager threw a punch at the plaintiff, shoved him, causing him to fall backward into his shopping cart, and began throwing punches as well as large juice cans at him. A jury found in favor of the plaintiff, but the trial court granted a post-trial directed verdict.

In reversing, the First Department observed that "Indubitably, the store manager was acting within the scope of his employment while he was filling the phone order. The ensuing argument with the woman and the manager's concomitant tension testified to by plaintiff were not clearly unforeseeable by his employer, and, unlike *Dykes v. McRoberts Protective Agency* . . . it cannot be said, as a matter of law, that the manager's apparently unprovoked attack against plaintiff was not carried out within the scope of his employment."[37] In so holding, the First Department made the following summary of the law of *respondeat superior* in New York:

> Mere disregard of instructions or deviation from the line of his duty does not relieve his employer of responsibility. "Wrongful acts are usually in violation of orders or in deviation from the strict line of duty. The test is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." Only where the servant for his own purposes departs from the line of his duty and abandons his service is his employer not liable. However, to constitute an abandonment

---

[36] *Stewartson v. Gristede's Supermarket, Inc.*, 271 A.D.2d 324 (1st Dept. 2000).
[37] *Id.* at 325.

7

of his service, the servant must be serving his own or some other person's purposes wholly independent of his master's business.[38]

Therefore, the First Department reversed the directed verdict and remanded for further proceedings.

Here, similarly, Baluyot had a history of using of force against students that was known to NYCDOE.[39] These uses of force never resulted in discipline or additional training.[40] Nevertheless, NYCDOE punished A.W. for misbehavior by placing him with Baluyot.[41] Regardless of whether Baluyot acted out of animus or misguided pedagogical goals, taking charge of and supervising A.W. was certainly part of Baluyot's work for the NYCDOE. Under the *Stewartson* decision, a jury could reasonably find that Baluyot's behavior was foreseeable and that he was serving NYCDOE's purposes and not merely his own purposes wholly independent of NYCDOE's business.

### B. The history of the relationship between employer and employee

Discovery has shown that Balayut had a history of using force against students in the school. Over the more than 20 years in which Balayut has been working as a para at P.S. 721K: (a) he blocked a student from leaving the SAVE room, leading to a physical altercation with the student (in 2000); (b) he physically prevented a different student from leaving the cafeteria, leading to another physical altercation (in 2001); and (c) he chased down and restrained a student who had run out of the school building (in 2014).[42] No investigations were made of these incidents.[43] The only reason they came to light during discovery is because Baluyot put in for

---

[38] *Id.* (internal citations omitted).
[39] Ptf 56.1 at 57-76.
[40] *Id.*
[41] *Id.* at 79-99.
[42] Ptf 56.1 at 57-76.
[43] *Id.*

8

compensation or paid leave to deal with injuries allegedly incurred by him as the "victim."[44] Moreover, although the NYCDOE temporarily suspended Baluyot while he was being investigated for his attack on A.W., he has since been reinstated.[45]

Having built an edifice that makes no mention of Baluyot's actual employment file, NYCDOE relies upon the Southern District of New York case of *Capak v. Epps*[46] in support of its motion. In *Capak*, a security guard assaulted a videographer/photographer while escorting a client into a building. In granting summary judgment to the employer on the issue of *respondeat superior*, the court highlighted that the employer was not aware of any prior violent acts by the security guard and did not have any reason to believe he had a propensity for violence.[47]

NYCDOE can only rely upon *Capak* by misstating the record in this case. Here, there were no fewer than three prior uses of force by Baluyot that were not investigated and did not result in retraining or discipline.[48] Nevertheless, A.W. was punished for misbehaving by being left in Baluyot's charge.[49] Baluyot and Defendants' other witnesses, including the principal and several teachers, have testified that A.W., a teenager with an IQ of 71, had behavioral issues.[50] In fact, when A.W. was in Baluyot's care on December 17, 2018, an incident was reported by another paraprofessional.[51] It is reasonable to infer that when Baluyot hit A.W. on December 17 and 18, 2018, he was doing so in an attempt to correct A.W.'s behavior.

---

[44] *Id*.
[45] *Id*. at 105-08.
[46] *Capak v. Epps*, No. 18-CV-4325, 2020 WL 3073210 (S.D.N.Y. June 10, 2020).
[47] *Id*. at 10.
[48] Ptf 56.1 at 57-76.
[49] *Id*. at 81-99.
[50] *Id*. at 52.
[51] *Id*. at 98.

9

It is undisputed that Baluyot had no grudge or personal vendetta against Plaintiff.[52] Baluyot's use of force was not for a personal objective but as corporal punishment. As of 2014, corporal punishment was still legal in public schools in 19 states,[53] and remains legal in private schools in New York and 47 other states.[54]

Although the practice was banned in New York public schools in 1985,[55] *The Times Union* in Albany reported in 2022 that state investigators substantiated more than 1,600 instances of corporal punishment in New York schools from January 2016-2021.[56] A substantial number of the complaints were in New York City public schools, the newspaper reported.[57] Given the lengthy history of the use of corporal punishment against students in New York and throughout the United States, it should hardly be surprising to find a teacher misguidedly attempting to correct alleged misbehavior by a teenager with a 71 IQ through the use of physical force.

Nevertheless, ignoring all of the discovery that leads to the reasonable inference that Baluyot had a misguided pedagogical goal in striking A.W., NYCDOE relies upon the following statement in the complaint: "Here, there is no evidence that A.W. was being punished, much less that the alleged actions were taken in furtherance of any DOE goal. Indeed, Plaintiffs themselves describe the attack as done 'maliciously and sadistically with the intent of harming A.W' and

---

[52] *Id*. at 77-78.
[53] Strauss, Valerie (September 18, 2014). "19 states still allow corporal punishment in school". *The Washington Post*.
[54] Gershoff, Elizabeth T.; Font, Sarah A. (2016). *"Corporal Punishment in U.S. Public Schools: Prevalence, Disparities in Use, and Status in State and Federal Policy"*.
[55] Maeroff, Gene (February 23, 1985). "Board of Regents Prohibits Corporal Punishment in Public Schools". *The New York Times*.
[56] Munson, Emilie, Solomon, Joshua, Rocheleau, Matt (September 26, 2022). "More than 1,600 corporal punishment cases substantiated in New York public schools in recent years". *The Times Union*.
[57] *Id*.

10

'not reasonably related to any disciplinary goal.' *See* ECF Dkt. No. 30 at ¶ 33."[58] The allegation in the complaint is not appropriately used on a summary judgment motion. Furthermore, that allegation does not state that it was not done to further NYCDOE's goals and is not inconsistent with furthering NYCDOE's goals. After discovery, Baluyot's pedagogical motivation is now crystal clear: through a misguided view of conditioned-response and negative reinforcement, Baluyot believed that it was his obligation, through the use of corporal punishment, to discourage Plaintiff from misbehaving. Given the lack of discipline and training by the NYCDOE, it was reasonably foreseeable that he would take matters into his own hands.

### C. Whether the act is one commonly done by such an employee

Where an employee has been vested with the authority to use force, that employee is acting within the scope of his employment even when his use of that force is excessive.[59] As evinced in depositions, including that of Principal Tremblay, Baluyot was authorized by the school district and state law to use force against students.[60] P.S. 721K is a school dedicated to educating students with disabilities which requires school employees to more frequently use physical force to restrain disruptive students and separate those students from the rest of the student body than is the case for other schools.[61] Plaintiff has shown that New York law and NYCDOE grant paraprofessionals like Baluyot the authority to use force against students with disabilities like Plaintiff and that paraprofessionals like Baluyot commonly use that authority.[62]

---

[58] Def. Memo. at 7.
[59] *See Rivera v. State*, 34 N.Y.3d 383, 390, 142 N.E.3d 641, 646 (2019) ("We have long recognized that, in cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment.").
[60] Ptf 56.1 at 51-55.
[61] *Id.*
[62] *Id.*

More importantly, as explained in Section II.B, above, discovery has shown that Balayut had a history of using force on students in the school.[63]

Just as NYCDOE argued in moving to dismiss, it argues here that Baluyot's actions could not be common among paraprofessionals because he did not act within the bounds of conduct authorized by the relevant DOE regulations. But as this Court noted in denying the 12(b)(6) motion, "the New York Court of Appeals has acknowledged in at least one case that whether 'an employee's use of corporal punishment violated regulations' does not necessarily mean that an employee's actions were outside the scope of employment."[64] Here, there is every indication that Baluyot's actions, while outrageous and unjustifiable, did not constitute, as NYCDOE would have it, "a malicious attack completely divorced from the employer's interests,"[65] but rather a misguided attempt at curing Plaintiff of his misbehavior.

Finally, NYCDOE relies upon the First Department case of *Sandoval v. Leake & Wass Servs., Inc.*,[66] in which two residential habilitation assistants in a home for intellectually and developmentally disabled adults, were alleged to have burned a nonverbal resident with a heated potato masher. NYCDOE quotes the first paragraph of the legal discussion, holding that "burning a resident with a heated potato masher is manifestly outside the scope of employment."[67] But the attack in *Sandoval* was not done for any pedagogical purpose. First, the resident was not a student. Second, one does not take a heated potato masher to a resident to correct behavior. There can be no conceivable justification, pedagogical or otherwise, for heating a potato masher and using it to burn a resident's body.

---

[63] *Id.* at 57-76.
[64] *A.W. by E.W.*, 519 F.Supp.3d at 141.
[65] NYCDOE Memorandum in Support at 6.
[66] *Sandoval v. Leake & Wass Servs., Inc.*, 192 A.D.2d 91 (1st Dept. 2020).
[67] *Id.* at 93.

Here, in contrast, Baluyot used a stick or a ruler to attempt to change the behavior of a student.[68] In other words, he used one of the common, stereotypical implements one thinks of when considering how to correct behavior in a school that allows corporal punishment. The staff, including the principal, admitted that they would often have to "put or "mov[e]" Plaintiff's hands down and tell him that his behavior was unacceptable.[69] The fact that Baluyot took matters one step further and used a stick or a ruler to correct A.W.'s behavior is still within the bounds of pedagogical practice. While using a ruler or a stick is no longer acceptable in New York public schools, it is not so far afield of traditional pedagogical methods as to bar *respondeat superior*.

### D. The extent of departure from normal methods of performance

In denying NYCDOE's motion to dismiss, this Court held that this factor weighed in Defendant's favor as there were no allegations that Baluyot was acting to discipline or control a disruptive student. This Court contrasted the allegations in the complaint here with the facts in *Cromer v. City Sch. Dist. Of Albany Bd. of Educ.*[70] and *Inglis v. Dundee Central School District Board of Education*.[71] In *Cromer,* the court found that a physical education teacher acted within the scope of employment when he grabbed and physically moved a student who was not listening to his instructions because the teacher was disciplining the student.[72] Similarly, in *Inglis*, a music teacher was found to have acted within the scope of employment when she slapped a student once across the face because "discipline of students is a normal and customary part of her employment" and "the extent of departure from performing that employment was not

---

[68] Ptf 56.1 at 97 & 102.
[69] *Id*. at 52.
[70] *Cromer v. City Sch. Dist. Of Albany Bd. of Educ.*, No. 01-02068683, 2002 WL 1174683 (N.Y. Sup. Ct. Apr. 5, 2002).
[71] *Inglis v. Dundee Central School District Board of Education*, 180 Misc.2d 156 (Sup. Ct. 1999).
[72] *Cromer*, 2002 WL 1174683, at *2.

13

a dramatic one."[73]

But discovery has revealed that Baluyot had no motive other than discipline and control of A.W.[74] Discovery has revealed that Baluyot was charged with supervising A.W. for misbehavior on December 17 and 18, 2018, and that he when he was in charge of A.W., he was allowed to take him to the basement as part of carrying out his duties as cleaner—duties with which A.W. was assisting him as a punishment for misbehaving.[75] Thus, the facts as developed through discovery have much in common with the uses of force as a form of discipline in *Cromer* and *Inglis*.

### E. Whether the specific act was one that the employer could reasonably have anticipated

Finally, as this Court observed in denying NYCDOE's motion to dismiss, "New York courts have held that infliction of physical punishment by a teacher or school staff is within the bounds of general foreseeability."[76] Baluyot's attacks on A.W. were a foreseeable consequence of the authority vested in him and the need to frequently use that force as an employee of a school that educates a significant number of students with developmental disabilities.

NYCDOE makes a common error in challenging the foreseeability of Baluyot's actions by confusing general foreseeability with specific foreseeability. As the New York Court of Appeals has warned, "for an employee to be regarded as acting within the scope of his employment, the employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected."[77] The precise details of Baluyot's actions—for example, whether he beat Plaintiff A.W. in the school basement

---

[73] *Inglis*, 180 Misc.2d 156.
[74] Ptf 56.1 at 77-78.
[75] *Id*. at 79-99.
[76] *A.W. by E.W.*, 519 F.Supp.3d at 142.
[77] *Riviello*, 47 N.Y.2d at 303, 391 N.E.2d at 1282.

14

as opposed to an empty classroom—matter less than whether the use of excessive force generally against a student was foreseeable. Moreover, discovery has shown that Baluyot could have brought A.W. to the basement as part of his duties, since Baulyot was put in charge of supervising A.W. while they were cleaning the classrooms on December 17 and 18, 2018.[78] Thus, Baluyot's actions were foreseeable. That is, he had a history of using force on students for which his actions were encouraged by NYCDOE as he was neither disciplined nor given additional training.

Finally, merely because Baluyot struck A.W. with a ruler or a stick does not that it was not for a pedagogical purpose. Use of a ruler or stick as a form of negative reinforcement is an old form of correction. NYCDOE chose to discipline A.W. for his behavior by making him stay behind and work under Baluyot's supervision and Baluyot's use of force to correct that behavior was foreseeable. Therefore, this fifth and final factor also weighs in favor of *respondeat superior* liability.[79] It is not so inconceivable that a teacher or paraprofessional might discipline a student with a ruler or stick during the school day, inside school, causing an injury. As such, Baluyot's actions of striking A.W. with a ruler or stick—while A.W. was under his supervision and inside the school building during school hours—are within the scope of *respondeat superior* and Defendant NYCDOE's motion should be denied.

---

[78] Ptf 56.1 at 79-99.
[79] *JG & PG ex rel. JGIII v. Card*, No. 08 CIV. 5668 (KMW), 2009 WL 2986640, at *11-12 (S.D.N.Y. Sept. 17, 2009), which Defendant cites, is inapposite. In that case, the teacher defendants allegedly engaged in an egregious and unforeseeable pattern of physical, sexual, and emotional abuse of infants spanning many years. Here, to the contrary, Plaintiffs allege that Baluyot's discrete actions were a generally foreseeable extension of his authority to use physical force against school students.

## CONCLUSION

Because Baluyot was acting within the scope of his employment, NYCDOE's motion for summary judgment should be denied.

Dated: June 22, 2023

/s/ Brian L. Bromberg
Brian L. Bromberg


**Attorneys for Plaintiff**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
Tel: (212) 248-7906
Email: brian@bromberglawoffice.com

Evan Brustein
Brustein Law PLLC
299 Broadway, 17th Floor
New York, NY, 10007
Tel: (212) 233-3900
Email: evan@brusteinlaw.com